UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

LARRY D. PALMER                          )
                                         )
            Plaintiff,                   )
                                         )
      v.                                 )         CIVIL NO.  3:12cv224
                                         )
MICHAEL ASTRUE,                          )
Commissioner of Social Security          )
                                         )
            Defendant.                   )

<u>OPINION AND ORDER</u>

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB).  42 U.S.C. §416(I); 42 U.S.C. §423; 42 U.S.C. §§ 1382, 1382c(a)(3).  Section 205(g) of the Act provides, <u>inter alia</u>, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. Gotshaw v. Ribicoff, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); Garcia v. Califano, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. See Jeralds v. Richardson, 445 F.2d 36 (7th Cir. 1971); Kutchman v. Cohen, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." Garfield v. Schweiker, 732 F.2d 605, 607 (7th Cir. 1984) citing Whitney v. Schweiker, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rhoderick v. Heckler, 737 F.2d 714, 715 (7th Cir. 1984) quoting Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); see Allen v. Weinberger, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." Garfield, supra at 607; see also Schnoll v. Harris, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. Mr. Palmer meets the insured status requirements of the Social Security Act through December 31, 2013.

2. Mr. Palmer has engaged in substantial gainful activity since June 7, 2007, the

alleged onset date (20 CFR 404.1571 <u>et seq.</u>, and 416.071 <u>et seq.</u>).

3.      Mr. Palmer had the following severe impairments: status/post lumbar disc fusion; ulnar nerve entrapment (Exhibits 1F, 8F) (20 CFR 404.1520(c) and 416.920(c)).

4.      Mr. Palmer does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, I find that Mr. Palmer has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), but with some exceptions. More specifically, Mr. Palmer can: lift, carry, push and/or pull up to 10 pounds; sit about 6 hours in an 8-hour workday; and, stand and/or walk at least 2 hours in an 8-hour workday, and he may use a cane to assist in ambulation. In addition, Mr. Palmer is limited to: no climbing ladders, ropes or scaffolds; occasional balancing, stooping, crouching, kneeling and crawling; and, no concentrated exposure to wetness, unprotected heights, and uneven surfaces. Further, Mr. Palmer is limited to occasional fingering with his non-dominant left hand.

6.      Mr. Palmer is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.      Mr. Palmer was born on March 19, 1966 and was 41 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      Mr. Palmer has a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Beginning on June 7, 2007, transferability of job skills is not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

[10.]    [Inadvertently skipped by the ALJ.]

11.      Considering Mr. Palmer's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Mr. Palmer can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

12. Mr. Palmer has not been under a disability, as defined in the Social Security Act, from June 7, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 41-47).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on September 4, 2012. On December 11, 2012, the defendant filed a memorandum in support of the Commissioner's decision, and on December 28, 2012, Plaintiff filed his reply. Upon full review of the record in this cause, this court is of the view that this case should be remanded.

A five step test has been established to determine whether a claimant is disabled. See Singleton v. Bowen, 841 F.2d 710, 711 (7th Cir. 1988); Bowen v. Yuckert, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

Nelson v. Bowen, 855 F.2d 503, 504 n.2 (7th Cir. 1988); Zalewski v. Heckler, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord Halvorsen v. Heckler, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative

inquiry.

Plaintiff protectively filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on April 14, 2009, alleging that he became disabled on June 7, 2007 (Tr. 146-50), due to symptoms associated with spondylolisthesis, spondylosis, and numbness in his left fingers and toes (Tr. 171). His applications were denied initially and upon reconsideration (Tr. 70-73). On October 7, 2010, Plaintiff appeared with counsel and testified at a hearing before an administrative law judge (ALJ); a vocational expert (VE) also testified (Tr. 52-69).

On December 6, 2010, the ALJ issued a decision in which he found that Plaintiff was not disabled under the Social Security Act (Tr. 39-47). On March 5, 2012, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-7), rendering the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely filed this civil action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), for review of the Agency's decision.

Plaintiff was 44 years old when the ALJ issued his decision (Tr. 47, 144). He had completed two years of college (Tr. 175) and had worked as a custodian and general laborer (Tr. 233).

On November 29, 2007, the Plaintiff underwent a lumbar decompression with laminectomy and fusion at L5-S1. (Tr. 207-210) However, he continued to report considerable back pain. In August of 2008, the Plaintiff's treating physician determined his back impairment had reached maximum medical improvement. (Tr. 212-213)

The Plaintiff presented to Dr. Ralph Inabnit on January 6, 2009 for a consultative

physical examination regarding his pending claim for disability benefits. At this meeting, he complained of severe back pain which worsened with sitting and precluded any bending, stooping, pushing, or pulling. Upon examination, Dr. Inabnit observed diminished motion in the lumbar spine, decreased grip strength in both hands, diminished motor strength in the upper and lower extremities, and decreased reflexes in all extremities. He documented that "[t]he claimant could walk without a cane for a few steps." Dr. Inabnit opined that the Plaintiff "can lift minimally." (Tr. 290-302).

On May 21, 2009, Dr. A. Dobson, a medical consultant, performed a physical RFC assessment regarding the Plaintiff's claim. In doing so, he concluded the Plaintiff could lift 10 pounds occasionally and less than 10 pounds frequently, stand and/or walk for at least two hours in an eight hour day with a "medically required" hand-held assistive device for ambulation, and sit for a total of six hours in an eight hour day. Dr. Dobson felt the Plaintiff could occasionally climb ramps or stairs, balance stoop, kneel, crouch, and crawl but never climb ladder, rope, or scaffolds. With no evidence of a neurological impairment in the record, he assessed no manipulative limitations. (Tr. 303-310) This opinion was affirmed by Dr. J.V. Corcoran on June 25, 2009. (Tr. 313-314).

On December 18, 2009, the Plaintiff presented to Dr. Henry DeLeeuw for a follow up orthopedic consultation. During this visit, he complained of severe lower back pain. He also described numbness in his toes as well as numbness and tingling sensations in his left fingers. The Plaintiff reported feeling as though his "entire left side is weak." After an examination, Dr. DeLeeuw determined the symptoms affecting the Plaintiff's left upper extremity "might possibly [be] carpal tunnel." He wrote that the Plaintiff may benefit from a referral to a hand surgeon. (Tr.

319-320).

The Plaintiff underwent an MRI of his lumbar spine on December 23, 2009. This procedure evidenced compression of the thecal sac at L3-4 and L4-5 due to prominent epidural fat. The interpreting radiologist thus concluded, "If the patient has symptoms of spinal stenosis this could be the cause. . ." (Tr. 325).

The Plaintiff returned to Dr. DeLeeuw for a follow up on December 28, 2009. The physician noted a recent MRI showing edema at L5-S1. Due to the Plaintiff's reports of persistent numbness and cramping in his left hand, Dr. DeLeeuw opted to schedule an EMG or nerve conduction study of the upper extremities. (Tr. 317-318). Accordingly, due to his complaints of numbness and weakness in his left upper extremity, the Plaintiff underwent an EMG on January 4, 2010. This procedure revealed evidence of bilateral median mononeuropathy at the wrist (carpal tunnel syndrome) and C8-T1 radiculopathy. (Tr. 323-324).

The Plaintiff met with Dr. DeLeeuw for a follow up on January 20, 2010 and complained of lower back pain. He reported pain in his neck as well as numbness in his left hand and foot. Specifically, the Plaintiff described numbness in the thumb and first two fingers. Viewing the results of the EMG, Dr. DeLeeuw diagnosed left ulnar nerve entrapment at the elbow. He concluded that "I don't think his back can be improved anymore" and referred the Plaintiff to a pain management specialist. (Tr. 315-316).

At a primary care consultation on January 26, 2010, the Plaintiff reported visiting the emergency room recently after falling down the stairs. He described pain with inspiration due to broken ribs. Dr. Linus Ngante prescribed Ultram and referred the Plaintiff to a pain management specialist. (Tr. 338-339)

The Plaintiff began presenting to Dr. Arman Borhan, a pain management specialist, in January of 2010. At an initial consultation on January 28, 2010, the Plaintiff indicated that Vicodin failed to alleviate his chronic lower back pain. He also described numbness and tingling radiating from his elbow into the fingers on the left upper extremity. On examination, Dr. Borhan documented an antalgic gait, a positive straight leg raise test on the left, a positive compression test at the left elbow, and an equivocal Tinel's sign at the left elbow. He diagnosed lumbar spondylosis, lumbar degenerative disc disease, lumbar radiculopathy, post laminectomy syndrome, and questionable cubital tunnel syndrome. Dr. Borhan prescribed Neurontin and administered an epidural steroid injection at L4-5. (Tr. 358-359).

At a follow up on February 12, 2010, Dr. Borhan observed tenderness in the lower axial spine and a positive straight leg raise test on the left. He prescribed Vicodin and Flexeril. (Tr. 356-357) On February 16, the Plaintiff complained of numbness and tingling extending from his left elbow to the first three digits of the left hand. Dr. Borhan administered another epidural steroid injection and wrote that he would consider a cubital tunnel injection at the Plaintiff's next visit. (Tr. 354-355).

The Plaintiff continued to present to Dr. Borhan throughout 2010, but never received a cubital tunnel injection. (Tr. 349-353) He received yet another epidural steroid injection in his lumbar spine on April 13, 2010. (Tr. 352) On August 11, 2010, the Plaintiff returned to Dr. Borhan complaining of severe lower back pain which radiated into his left lower extremity. Dr. Borhan wrote, "The patient is lying on the floor. He states that he is unable to sit in a chair." Upon examination, the specialist observed tenderness to palpation in the lower lumbar paraspinal musculature and a positive straight leg raise test on the left. (Tr. 349).

The ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, and with the same education and work experience, who could perform sedentary work (Tr. 67) He was limited to occupations that did not require climbing; more than occasional balancing, stooping, kneeling, crouching and crawling; concentrated exposure to wetness; working at unprotected heights or on uneven surfaces (Tr. 67). The ALJ added that the individual "may have some loss of feeling in the [thumb] and two forefingers of the left non-dominant hand while manipulative abilities are preserved" (Tr. 67). The vocational expert testified that the hypothetical individual described by the ALJ could perform light work as a surveillance monitor (with about 1,500 positions existing in the state of Indiana), order clerk, food and beverage (700 to 1,000 positions), and call-out operator (700 to 1,000 positions) (Tr.67-68). The vocational expert testified that the jobs he had cited were consistent with their descriptions in the Dictionary of Occupational Titles (DOT) (Tr. 68).

The ALJ found that Plaintiff had engaged in substantial gainful activity during 2008 and 2009, but he nevertheless continued with the sequential evaluation process (Tr. 41). The ALJ found that Plaintiff had severe impairments, but that he did not have an impairment or combination of impairments that met or medically equaled any of those included in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1 (Tr. 41-42). The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible (Tr. 43). The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work (Tr. 42). Plaintiff required the opportunity to use a cane to assist him in ambulation, and he could not climb ladders, ropes or scaffolds; could only occasionally balance, stoop, crouch, kneel and crawl; and could not work in an environment that

involved concentrated exposure to wetness, unprotected heights, and uneven surfaces. Plaintiff was further limited to occasional fingering with his non-dominant left hand (Tr. 42). Based on this RFC finding, the ALJ found that Plaintiff could not perform any of his past relevant work but could perform jobs that existed significant numbers in the national economy and was therefore not disabled (Tr. 45-47). *See* 20 C.F.R. § 404.1520(a)(4)(v).

In support of his request for reversal or remand, the Plaintiff first argues that the ALJ failed to satisfy his Step Five burden to show that there are other jobs in the national economy that the Plaintiff can perform. More specifically, the Plaintiff argues that the ALJ erred by failing to fully set forth the Plaintiff's limitations in his questioning of the vocational expert. The ALJ's hypothetical question asked the VE to assume the Plaintiff's manipulative abilities with the left upper extremity were "preserved." (Tr. 62). However, the ALJ also found that because of left ulnar nerve entrapment the Plaintiff could only perform occasional fingering with the left hand. The Plaintiff asserts that the ALJ's failure to present this limitation to the VE rendered the VE's testimony inaccurate.

The Commissioner has conceded that the ALJ's hypothetical question did not fully account for the Plaintiff's limitations. (Def. Brief, p. 10). The Commissioner argues that this error is harmless because the ALJ's RFC was supported by substantial evidence and was "accommodated by at least two jobs identified by the vocational expert." The Plaintiff, however, has also argued that the RFC is not supported by substantial evidence and that the Commissioner's arguments that the ALJ considered all the evidence of record and that the Plaintiff failed to present sufficient evidence of his impairment are simply unfounded. The ALJ determined that the Plaintiff could only finger with the left upper extremity on an occasional

10

basis, but assessed no restrictions concerning his ability to engage in gross manipulation. (Tr. 42; See Tr. 306) While the ALJ cited the state agency consultants who assessed no manipulative limitations (with either fine motor tasks or gross grasping), he never discussed any of the medical evidence regarding the Plaintiff's treatment for weakness and numbness in the left upper extremity. (Tr. 42-45; See Tr. 303-310, 313-314, 358-359) The ALJ ignored the consultative examiner's observation of diminished grip strength in both hands as well as this doctor's ultimate conclusion that the Plaintiff could only "lift minimally". Rather, the ALJ stated that this examination revealed "no weakness in any of [the Plaintiff's] extremities." (Tr. 290-302; Tr. 44) Further, the ALJ ignored the January 2010 EMG objectively documenting that the Plaintiff suffered from carpal tunnel syndrome and cervical radiculopathy. (Tr. 42-45; See Tr. 323-324) This court agrees with the Plaintiff that the Commissioner's argument that the ALJ adequately considered all the medical evidence regarding the Plaintiff's upper extremity limitations must be rejected.

The Commissioner also defends the ALJ's failure to articulate any basis for his upper extremity RFC finding by noting that "it was consistent with the [state agency physician] opinions" and by stating that the ALJ was "entitled to rely" on these opinions. (Def. Brief, pp. 7-8) However, the Commissioner's argument that the ALJ's upper extremity RFC finding (only occasional fine manipulation and no gross manipulative limitations) was consistent with the state agency consultants' opinions (no gross or fine manipulative limitations at all) is not supported by the record. (Tr. 42-43; Tr. 306)

Plaintiff also argues that the ALJ failed to adequately consider and articulate whether the claimant's combined impairments equaled the intent of Listing 1.04. (Pl. Brief, pp. 22-25)

Plaintiff specifically contends that the ALJ failed to consider whether the claimant's back condition and upper extremity limitations would limit the functioning of both upper extremities and failed to request a medical opinion before concluding this listing was not equaled. (Pl. Brief, p. 24) The Commissioner argues that the ALJ properly relied upon the opinion of the state agency physician, who accounted for the Plaintiff's need for a cane. (Def. Brief, p. 6) The Commissioner also suggests the error is harmless because the Plaintiff has identified "no evidence" indicating that Listing 1.04 was implicated.

The Plaintiff contends that the Commissioner's argument that the ALJ's reliance on the state agency consultants' opinions satisfies his duty to offer more than a perfunctory presumptive disability analysis is meritless. While the state agency physicians did account for the Plaintiff's need for an assistive device, they did not account for the claimant's upper extremity limitations when determining whether any listings were met or equaled. The state agency consultants' opinions were offered in May and June of 2009 and assessed no manipulative limitations whatsoever. However, as the Plaintiff points out, these doctors were not able to view the January 2010 EMG showing bilateral carpal tunnel syndrome and cervical radiculopathy. (Tr. 303-310, 313-314, 323-324) Clearly, in light of this evidence, the ALJ's reliance on the consultative opinions for his presumptive disability finding is insufficient.

The Commissioner's argument that the state agency opinions, which he admits were based on the physicians' review of the record "[a]t the time they issued their determinations," were a sufficient basis for the ALJ's presumptive disability finding is fatally flawed. Because the additional medical evidence regarding the Plaintiff's left upper extremity may have changed their opinions regarding Listing 1.04 and resulted in a conclusion that the Plaintiff's combined

impairments limit the functioning of both upper extremities, the ALJ's mere reliance on these opinions cannot satisfy his duty to "offer more than a perfunctory analysis of the Listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004); *Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003); SSR 96-6p.

The Commissioner's argument that the Plaintiff did not produce any evidence that Listing 1.04 is equaled is also meritless. This listing contemplates an "inability to ambulate effectively," defined as a need for assistive device(s) that limits the functioning of both upper extremities. (Pl. Brief, p. 24 (citing Listing 1.04C and 1.00B2b(1)) The Commissioner concedes that the ALJ and state agency doctors concluded the claimant's need for a cane would impair one upper extremity, but notes that they felt he "should be able to carry weight in [his] contralateral upper extremity." (Tr. 304) However, it is clear that the Plaintiff pointed to his need for a cane as well as the objectively verified numbness and weakness affecting his left upper extremity to argue that this listing was implicated.  The Plaintiff's need to hold an assistive device would impair one upper extremity, and his ability to "carry weight in [his] contralateral upper extremity" would be impaired by the numbness and weakness affecting that extremity. Clearly, the Plaintiff presented significant evidence demonstrating limited function of both upper extremities which implicates Listing 1.04C.

The Commissioner has failed to offer any defense of the ALJ's refusal to consult a medical expert for a fully informed medical opinion on equivalence or adequately articulate on his own whether the intent of this listing was equaled.  Accordingly, because the ALJ failed to consider whether the Plaintiff's combined impairments equaled Listing 1.04, and also failed to support his RFC finding with substantial evidence, his finding under Step Five that there are jobs

in the national economy that the Plaintiff can perform is not supported by substantial evidence. Therefore, this case will be remanded for further proceedings.

Conclusion

On the basis of the foregoing, this matter is hereby REMANDED for further proceedings consistent with this opinion.

Entered: January 8, 2013.

s/ William C.  Lee
William C. Lee, Judge
United States District Court